UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS,<br><br>Appellant,<br><br>v.<br><br>PG&E CORPORATION, et al.,<br><br>Appellees. | Case No. 20-cv-01493-HSG<br><br>**ORDER DENYING MOTION FOR LEAVE TO APPEAL**<br><br>Re: Dkt. No. 3 |

Pending before the Court is the motion of the Ad Hoc Committee of Holders of Trade Claims ("Trade Committee") for leave to appeal (Dkt. No. 3-2, "Motion for Leave"), pursuant to 28 U.S.C. Section 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004(a), the Interlocutory Order Regarding Postpetition Interest (BR Dkt. No. 5669)[1] entered on February 6, 2020 ("PPI Order") and Memorandum Decision entered on December 30, 2019 (BR Dkt. No. 5226) ("PPI Memorandum") (together "PPI Memorandum and Order"). Having carefully considered the briefs[2] and the PPI Memorandum and Order, the Court **DENIES** the Motion for Leave.

I. **BACKGROUND**

   A. **The Bankruptcy Filing**

On January 29, 2019 ("Petition Date"), PG&E Corporation ("PG&E Corp.") and its primary operating subsidiary, Pacific Gas and Electric Company ("Utility," and together with PG&E Corp., "Debtors"), commenced the Chapter 11 cases. This was due to "a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in

---

[1] "BR Dkt. No." references are to the Bankruptcy Court's docket, Case No. 19-30088 (DM) (Bankr. N.D. Cal.). "Dkt. No." references are to this Court's docket.
[2] Including Dkt. No. 31 ("AHC Opp."); Dkt. No. 32 ("Debtors' Opp."); Dkt. No. 48 ("Reply").

2017 and 2018, and [the Debtors'] potential liabilities arising therefrom." *See* Amended Declaration of Jason P. Wells (BR Dkt. No. 263, "Wells Decl.") at 3. In addition to liability arising from the wildfires, the Debtors had "approximately $22 billion in outstanding funded debt obligations" under prepetition lending facilities. *See* [Proposed] Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (BR Dkt. No. 5700, "Proposed Disclosure Statement") at 6.

The timeline of the Debtors' Chapter 11 cases and confirmation of a chapter 11 plan is dictated in part by the terms of Assembly Bill 1054 ("AB 1054"), a California statute that "established a statewide fund that participating utilities may access to pay for liabilities arising in connecti[on] with future wildfires occurring after July 12, 2019 (the 'Go-Forward Wildfire Fund')." *See* Proposed Disclosure Statement at 7. Debtor Utility intends to participate in the Go-Forward Wildfire Fund, and in order to do so, "the Utility's Chapter 11 Case [must be] resolved pursuant to a plan of reorganization or similar document not subject to stay" by June 30, 2020. *Id.*

### B. The Debtors' Plan

On September 9, 2019, the Debtors filed the Debtors' Joint Chapter 11 Plan of Reorganization. BR Dkt. No. 3841. The Debtors have since filed amended and revised versions of a chapter 11 plan, with the most recent dated January 31, 2020. BR Dkt. No. 5590 (the "Debtors' Plan"). Relevant to this dispute, the Debtors' Plan assumes that the Debtors' estates are solvent. As a result, holders of allowed "General Unsecured Claims" are to be paid in full in cash on the effective date of the Debtors' Plan. *See id.* §§ 4.4(a), 4.21(a). The Debtors' Plan further provides for payment of postpetition interest accruing from the Petition Date through the effective date "at the Federal Judgment Rate," which is calculated at 2.59%. *Id*. § 1.73. General Unsecured Claims are "Unimpaired," and not permitted to vote on the Debtors' Plan. *Id*. §§ 4.4(b), 4.21(b).

### C. The Postpetition Interest Dispute

Out of recognition of the need to confirm a chapter 11 plan before the June 30, 2020 deadline under AB 1054, the parties began focusing on plan-related issues that could be litigated prior to the ultimate hearing on confirmation of the Debtors' Plan. The parties identified one such issue as the dispute over whether any plan must pay postpetition interest at the "Federal Judgment

2

Rate," as the Debtors proposed, or pursuant to state law, as several creditor groups contended, including the Trade Committee. *See, e.g.*, Sept. 24, 2019 Hr'g Tr. at 26:8–20; Oct. 23, 2019 Hr'g Tr. at 32:10–14, 33:1–3 (statement by Judge Montali that "I would like to break the confirmation issues into discrete things, like these, that they are confirmation issues."). Part of the Bankruptcy Court's rationale for resolving the issue early was to also address any appeal on postpetition interest at an early stage. *See* Sep. 24, 2019 Hr'g Tr. at 40:6–9 ("If I make a ruling, that's my job. If my ruling is appealed on an interlocutory basis, that's an option for the parties and something else to deal with. But we can't even get there if we don't start by teeing it up here.").

On October 31, 2019, the Bankruptcy Court entered an order (BR Dkt. No. 4540, "Scheduling Order") setting a schedule for addressing "whether the postpetition interest rate applicable to unsecured claims under any chapter 11 plan of reorganization is the Federal Judgment Rate or some other rate, such as the rate of interest under the applicable contract and/or other applicable state law" (the "PPI Dispute"). The Scheduling Order also contemplated a potential appeal of a decision on the issue:

> When the court does issue the orders on these questions there are several alternatives. First, any aggrieved party *may seek interlocutory review* under Fed. R. Bankr. P. 8004. Second, the court on its own or upon request of a party, may certify direct appeal under Fed. R. Bankr. P. 8006, as it did earlier in these cases in AP 19-3003. Finally, the court will be able to consider a request for certification under Fed. R. Bankr. P. 7054(b) of the discrete contested matter posed by the issue presented.

Scheduling Order at 6 (emphasis added).

Relying on the Ninth Circuit's decision in *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), the Debtors argued that the Federal Judgment Rate is the appropriate rate in calculating postpetition interest on allowed unsecured claims in a solvent debtor case under chapter 11 of the Bankruptcy Code. *See* BR Dkt. No. 4624 at 1 ("*Cardelucci* is dispositive, and the creditors' arguments for higher rates of interest cannot overcome this controlling precedent."). Certain creditor groups, including the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Secured Noteholders of Pacific Gas and Electric Company (the "AHC"), and the Trade Committee, argued that under California law, contract-based claims accrue interest at a contractual

3

rate, and in the absence of such a rate, at the statutory rate of 10%. *See* Cal. Civ. Code § 3289.

On December 30, 2019, the Bankruptcy Court ruled in the PPI Memorandum that "the Debtors are correct, that *Cardelucci* controls and that the Federal Interest Rate applies to any Plan." PPI Memorandum at 2. The Bankruptcy Court, however, did not immediately enter the PPI Order. Instead, the Bankruptcy Court stated that "[b]ecause of the close relationship between the postpetition interest question and the issues presented in the forthcoming Make-Whole dispute, orders disposing of them both at the same time seem[] appropriate and efficient," and that "[w]hether either or both questions should be certified for direct appeal or [be] treated as final for purposes of Fed. R. Bankr. P. 7054, can be visited later."[3] *Id.* at 17.

On January 27, 2020, the Debtors sought approval of a Restructuring Support Agreement entered into with the AHC ("Noteholder RSA"). Under Section 2(a)(i) of the Noteholder RSA, each "Consenting Noteholder" is deemed to "consent to deferral of the entry of a final order on the Bankruptcy Court's decision on the post-petition interest issues to the entry of the Confirmation Order . . . ." In response, the Trade Committee filed a letter (BR Dkt. No. 5517), requesting that the Bankruptcy Court certify the PPI Memorandum as a final order under Fed. R. Civ. P. 54(b), and for direct appeal to the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A).

The Bankruptcy Court expressed doubt that certification would be proper. On February 4, 2020, the Bankruptcy Court ruled that it could not "just decree that [the PPI Order is] a final order, when it isn't a final order. *But it's clearly an interlocutory order*." Feb. 4, 2020 Hr'g Tr. at 48:20–22, 50:6–8 (emphasis added). The Bankruptcy Court noted that the purpose of the PPI Memorandum was to provide guidance for a confirmable plan and that, once a confirmation order was entered, all parties would have the right to appeal. *See* Feb. 4, 2020 Hr'g Tr. at 49:18–21.

On February 6, 2020, the Bankruptcy Court entered the PPI Order. In the PPI Order, the Bankruptcy Court again "conclude[d] that the Debtors are correct, that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) controls and that the Federal Interest Rate applies to the postpetition treatment of unsecured creditors under any Chapter 11 Plan of Reorganization proposed by

---

[3] Pursuant to the Scheduling Order, the Bankruptcy Court scheduled the dispute regarding the make-whole issue on a similar schedule as the PPI Dispute. *See* Scheduling Order ¶ 7

4

Debtors." PPI Order at 2. In the PPI Order, the Bankruptcy Court left "the question of dealing with an interlocutory order for another court if there is an appeal." *Id.*

II. **LEGAL STANDARD**

A determination of whether an order is final or interlocutory is jurisdictional and thus can be raised sua sponte and reviewed de novo by an appellate court. *See In re Bonham*, 229 F.3d 750, 760–61 (9th Cir. 2000); *In re TV, LLC*, Nos. CC–11–1263–HKiMk, CC–11–1264–HKiMk, 11–141562012 WL 1521633, at *3 (B.A.P. 9th Cir. Apr. 30, 2012) ("Questions of our own jurisdiction, such as whether an order is final, may be raised sua sponte, and are reviewed de novo. . . . Whether a bankruptcy court's decision is final is a question of law reviewed de novo.") (citing *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003)). Denial of leave to appeal is left to the sound discretion of the Court. *See City of Desert Hot Springs*, 339 F.3d at 787. While the Court applies a flexible standard in considering whether to hear interlocutory appeals in the bankruptcy process, "traditional finality concerns still 'dictate that we avoid having a case make two complete trips through the appellate process.'" *Id.* at 787 (citation omitted).

A. **Final Orders**

Ordinarily, a "final decision" is one which "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (quotations and citation omitted). "In bankruptcy proceedings, [the Ninth Circuit] has cautioned against applying with 'blind adherence' the rules of finality developed under the general grant of appellate jurisdiction contained in 28 U.S.C. § 1291" and instead "has adopted a pragmatic approach to deciding whether a bankruptcy court's order is final, recognizing that 'certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'" *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 800 (9th Cir. 1987) (quoting *In re Mason*, 709 F.2d 1313, 1316–17 (9th Cir. 1983)).

Under this "pragmatic approach" to finality, a party may appeal an order as of right where the order: "1) resolves and seriously affects substantive rights and 2) finally determines the

5

discrete issue to which it is addressed." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992) (citing *In re Allen*, 896 F.2d 416, 418–19 (9th Cir. 1990)). If "further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review." *Technical Knockout*, 833 F.2d at 800 (quotation and citation omitted).

As the Supreme Court recently noted, "[c]orrect delineation of the dimensions of a bankruptcy 'proceeding' is a matter of considerable importance'" because "[a]n erroneous identification of an interlocutory order as a final decision may yield an appeal over which the appellate forum lacks jurisdiction." *Ritzen*, 140 S.Ct. at 587. "An order in a bankruptcy proceeding is final and thus appealable" within the meaning of Section 158(a)(1) only "if it 'alters the status quo and fixes the rights and obligations of the parties … [or] alters the legal relationships among the parties.'" *Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 949 F.3d 483, 487 (9th Cir. 2020) (ellipses and alteration in original) (quoting *Gugliuzza v. FTC (In re Gugliuzza)*, 852 F.3d 884, 893 (9th Cir. 2017)).

### B. Interlocutory Orders

If an order is not final, the Court has jurisdiction to hear an appeal of an interlocutory order of a bankruptcy court if it grants leave to appeal. *See* 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8002, 8004(a)(2)(b). Leave to appeal an interlocutory order is appropriate where (1) there is a controlling question of law, (2) as to which a substantial ground for a difference of opinion exists, and (3) an immediate appeal could materially advance the ultimate termination of the litigation. *See In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (under Section 1292(b), an interlocutory appeal is within court's discretion where there is a controlling question of law, substantial grounds for difference of opinion, and the appeal may materially advance the ultimate termination of the litigation, as well as under "exceptional circumstances"). In deciding whether to grant leave to appeal under Section 158(a)(3), courts look to the analogous provisions of 28 U.S.C. Section 1292(b) governing review of interlocutory district court orders by the courts of appeal. *See Belli v. Temkin (In re Belli)*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001); *In re Wilson*, No. BR 13-11374 AJ, 2014 WL 122074, at *1 (N.D. Cal. Jan. 10, 2014).

First, a question of law is "controlling" if its resolution on appeal could "materially affect

the outcome of the litigation in district court." *Cement*, 673 F.2d at 1026; *Helman v. Alcoa Global Fasteners, Inc.*, 637 F3d 986, 990-992 (9th Cir. 2011) (permission to appeal under 1292(b) granted where issue of definition of "high seas" in federal statute was determinative of the viability of the complaint). On the second factor, substantial grounds for a difference of opinion on a legal question are generally found to exist where (1) the relevant circuit court has not spoken on the point and other circuits are in dispute, (2) complicated questions of foreign law are involved, or (3) the issue presents novel and difficult questions of first impression. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). The fact that an issue is novel, or that there is a disagreement about which authority is controlling does not, by itself, constitute a substantial difference of opinion to support an interlocutory appeal. *See id.* On the third factor, appeal of an interlocutory order must serve judicial economy by materially advancing the ultimate termination of the litigation. *See In re Travers*, 202 B.R. 624, 626 (9th Cir. B.A.P. 1996). This factor is met when resolution of the controlling question of law "may appreciably shorten the time, effort, or expense of conducting a lawsuit." *Cement*, 673 F.2d at 1027.

III. **DISCUSSION**

    A. **Appeal as of Right**

The Bankruptcy Court recognized that, were its interlocutory rulings on plan issues deemed final and subject to immediate appeal, every aggrieved party could appeal each discrete issue in piecemeal fashion. *See* Feb. 4, 2020 Hr'g Tr. at 40:13–24 ("And I know, from my experience both as a trial judge but also an appellate judge on the Bankruptcy Appellate Panel, that appellate courts don't like to have piecemeal appeals; it doesn't make sense; it's not efficient."). The piecemeal appellate structure that would necessarily ensue if rulings like the PPI Memorandum and Order were final orders is strongly disfavored, and would not promote judicial economy. *See In re Marino*, 949 F.3d at 487 ("The Supreme Court has discouraged this type of piecemeal litigation for its inefficiency.") (citing explanation in *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1693 (2015), that the "rule of finality" exists to avoid "climb[s] up the appellate ladder and slide[s] down the chute" and the "delays and inefficiencies" that result).

Under Supreme Court precedent, an order entered in connection with the process of

7

negotiating and obtaining approval of a plan becomes a final and appealable order only when (or if) a bankruptcy court enters a confirmation order fixing the rights and obligation of the parties. In *Bullard*, the Supreme Court held that a bankruptcy court's order rejecting a proposed plan was not final because it did not conclusively resolve the relevant "proceeding" within the bankruptcy case. 135 S. Ct. at 1692. The Supreme Court held that the relevant proceeding for determining finality was not any individual plan proposal, but rather "the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward." *Id*. The Supreme Court reasoned that, unlike an order denying plan confirmation, "*only plan confirmation—or case dismissal*—alters the status quo and fixes the rights and obligations of the parties" to the degree necessary for a final order. *Id*. (emphasis added).

Put differently, the Supreme Court has recognized three confirmation scenarios: (1) plan confirmation, (2) confirmation denial and case dismissal, and (3) denial of confirmation with leave to amend. *Id*. at 1692-93. The first two scenarios provide measures of finality, and fix certain rights and legal obligations, whereas denial of confirmation with leave to amend "changes little." *Id*. at 1693. The Supreme Court also rejected the argument that an order denying confirmation was final because it foreclosed the possibility of confirmation of the specific plan at issue. *Id.* ("An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a 'final' purchasing decision by either the buyer or seller. 'It ain't over till it's over.'").[4]

And it is not over for the Trade Committee. The Trade Committee asserts that "the PPI Order is not like an order denying summary judgment or confirmation in that it does not contemplate any further proceedings on the topic to which it is addressed." Reply at 5. But that is not accurate. The issue is not whether the Trade Committee will have "further proceedings on the topic;" rather, the issue is whether the Trade Committee will have further proceedings on the confirmation of the Debtors' (current or future) Plan. The Plan is highly likely to be amended—

---

[4] Similarly, in *Ritzen*, the Supreme Court recently held that "the issue of appealability" should "be determined for the entire category to which a claim belongs." 140 S. Ct. at 591.

8

possibly materially—several times before confirmation, and will not be "over" until the confirmation order is entered. *See In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1377 (9th Cir. 1985) ("[If] further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review.") (internal quotation marks omitted).

The fact that the PPI Memorandum and Order has some connection to the confirmation of the Plan does not render it a final decision. That is precisely why the Ninth Circuit deems, for example, orders concerning disclosure statements to be interlocutory. *See Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1216 (9th Cir. 1994) ("[R]eviewing approval of a disclosure statement immediately is not merely unnecessary, it is premature."). Upon plan confirmation, the "entire category" of confirmation issues will be resolved and the treatment of the claims held by members of the Trade Committee will be "definitively dispose[d] of." *See Ritzen*, 140 S. Ct. at 586.

The Trade Committee will have the opportunity to be heard at the confirmation hearing, then appeal any adverse confirmation order, if one is entered. The PPI Memorandum and Order is only one piece of a (very) large confirmation puzzle, and depending on what transpires at the confirmation hearing, it may no longer be relevant if the Plan is not confirmed. The PPI Memorandum and Order is not a final order.[5]

### B. Interlocutory Order

Because the PPI Memorandum and Order is not final, it necessarily follows that it is an interlocutory order, and the Court may only entertain an appeal if it grants leave. *See* 28 U.S.C. § 158(a), Fed. R. Bankr. P. 8002, 8004(a)(2)(b). Leave to appeal an interlocutory order of a bankruptcy court is appropriate where: (1) there is a controlling question of law, (2) as to which a substantial ground for a difference of opinion exists, and (3) an immediate appeal could materially advance the ultimate termination of the litigation. *Cement*, 673 F.2d at 1026.

---

[5] The Debtors and the AHC incorrectly assert that the Bankruptcy Court's decision not to certify the PPI Memorandum and Order as a final order under Rule 54(b) has some impact on this Court's ability to consider this appeal of the PPI Memorandum and Order. Debtors' Opp. at 9, n.6; AHC Opp. at 10–11. Rule 54(b) has no bearing on whether the PPI Memorandum and Order is a final order appealable as of right under Section 158(a) because that section already provides for appeals of final orders as to discrete "proceedings," not just "cases." *See Ritzen*, 140 S. Ct. at 587.

### i. Controlling Question of Law

In the Ninth Circuit, "for a question to be 'controlling' [it must be shown] that resolution of the issue on appeal could materially affect the outcome of litigation." *Id.* (citation omitted). In the Trade Committee's view, this appeal involves a "controlling question of law" because it may open the door to the exercise of voting and other rights under Section 1129 at the confirmation hearing. Mot. at 13. Ninth Circuit precedent is clear that the focus of the "controlling question of law" inquiry must be the connection that the interlocutory appeal has to the underlying case, not whether the resolution of the question on appeal will resolve the portion of the case implicated by the appeal. *See Cement*, 673 F.2d at 1027 (explaining that if question is "separable from and collateral to the merits of [the] lawsuit," it is not controlling).

According to the Trade Committee, its members hold $308 million in trade claims (Mot. at 1, n. 1), and seek payment of approximately $34 million in postpetition interest.[6] While that sum is not small, the Plan addresses over $50 billion in liabilities, including more than $2 billion in trade payables. *See* Debtors' Opp. at 12. The issue regarding the appropriate rate of postpetition interest to be paid on the claims of members of the Trade Committee is not so critical that its determination now will have a material impact on the confirmation proceedings. In fact, the Debtors are on record that "if we lose . . . , we will amend the plan to unimpair [the affected creditors]" by paying the postpetition interest rate to which those creditors are entitled. *See* AHC Opp. at 12 (quoting Sept. 24, 2019 Hr'g Tr. at 28:13-15).

The Trade Committee has not shown that an appeal now, rather than (potentially) later, would materially affect plan confirmation beyond making conclusory statements such as "[i]f holders of General Unsecured Claims are entitled to postpetition interest consistent with state law, rather than limited to the Federal Judgment Rate, then they would in fact be impaired by the Debtors' Plan because the Debtors' Plan will be depriving holders of General Unsecured Claims of their 'legal, equitable, and contractual rights' to postpetition interest at potentially higher rates."

---

[6] The Debtors calculate this by noting that "[t]he Trade Committee seeks interest at the state statutory rate of 10%, which is 7.41% higher than the Federal Judgment Rate of 2.59% to be paid under the Plan. Eighteen months of interest on $308 million at 7.41% is roughly $34.2 million." Debtors' Opp. at 12, n. 7.

Mot. at 13. Under these circumstances, the issue on appeal is not a controlling question of law.

## ii. Substantial Grounds for a Difference of Opinion

Even if the issue is a "controlling question of law," the Trade Committee does not show substantial grounds for a difference of opinion. The true center of the dispute is whether the Ninth Circuit's decision in *Cardelucci* is controlling and dispositive on the issue. While "courts must examine to what extent the controlling law is unclear," the Court need not certify an appeal if the law of the circuit supports the Bankruptcy Court's ruling, even though there may be a difference of opinion between the circuits on the question at issue. *See Couch*, 611 F.3d at 633. In the Ninth Circuit, the "threshold showing is high" for the "substantial ground for difference of opinion" prong of the analysis. *In re ThinkFilm, LLC*, Nos. CV 12-9795, et al., 2013 WL 654010, at *2 (C.D. Cal. Feb. 21, 2013) (citation omitted).

### a. *Cardelucci* is Controlling Ninth Circuit Precedent

The Bankruptcy Court held that *Cardelucci* "controls" the issue of postpetition interest payable under the Plan. *See* PPI Order at 2; PPI Memorandum at 2. This Court agrees. In *Cardelucci*, the Ninth Circuit framed the issue as "present[ing] the narrow but important issue of whether such post-petition interest is to be calculated using the federal judgment interest rate or is determined by the parties' contract or state law." 285 F.3d at 1233. The Ninth Circuit's holding in *Cardelucci* is clear: "Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to 'payment of interest at the legal rate,'" and "Congress intended 'interest at the legal rate' in 11 U.S.C. § 726(a)(5) to mean interest at the federal statutory rate pursuant to 28 U.S.C. § 1961(a)." *Id.* at 1234. In so holding, the Ninth Circuit observed that application of the lower federal judgment rate did not violate an unsecured creditor's substantive due process rights, *id.* at 1236, and that using that rate for all claims was "rationally related to legitimate interests in efficiency, fairness, predictability, and uniformity within the bankruptcy system." *Id.*

The Trade Committee attempts to distinguish *Cardelucci* by contending that the plan in that case involved impaired claims, while the Debtors' Plan here proposes to leave general unsecured claims unimpaired, such that Section 726(a)(5) of the Bankruptcy Code—the section cited in *Cardelucci* to derive the "legal rate" for postpetition interest—is inapplicable. Mot. at 15-

11

16. The Trade Committee also contends that "*Cardelucci* is substantially narrower than the interpretation given to it by the Bankruptcy Court." Reply at 11.

The Trade Committee's contention that the Ninth Circuit's decision in *Cardelucci* is not controlling authority—and only applicable to a narrow set of facts—is unavailing. To the extent that the Trade Committee believes that the Ninth Circuit never intended its ruling to apply to unimpaired claims, *Cardelucci* certainly does not say that. While the Ninth Circuit pinpointed a "narrow but important issue," it did not narrow the application of its holding. The "narrow but important issue" *Cardelucci* resolved is what "legal rate" applies to postpetition interest in a solvent debtor case. *Id*. at 1234 ("Where a debtor in bankruptcy is *solvent*, an *unsecured creditor* is entitled to 'payment of interest at *the legal rate* from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor.") (emphasis added) (citation omitted). That is precisely the issue resolved in the PPI Memorandum and Order.

### b. The Appeal Does Not Require Resolution of Conflicting Authority

Because the Ninth Circuit's decision in *Cardelucci* is controlling and clear, this appeal does not require the resolution of conflicting Ninth Circuit authority. *Couch*, 611 F.3d at 633-34. Moreover, even if the application of *Cardelucci* to this case hypothetically were somehow unclear, other Ninth Circuit decisions are not in conflict with *Cardelucci* or the Bankruptcy Court's PPI Memorandum and Order. For example, the Trade Committee contends that *In re L & J Anaheim Assocs.*, 995 F.2d 940 (9th Cir. 1993)—a decision that predates *Cardelucci*—conflicts with *Cardelucci* and the PPI Memorandum and Order. *See* Mot at 22. But *L & J Anaheim* did not involve postpetition interest. *L & J Anaheim* only interpreted Section 1124 of the Bankruptcy Code to mean that "'Congress define[d] impairment in the broadest possible terms,'" and that "'any alteration of [a creditor's] rights constitutes impairment even if the value of the rights is enhanced.'" *Id.* at 942. The Trade Committee contends that *L & J Anaheim* is conflicting authority because the claims of its members will be impaired by the Plan unless postpetition interest is paid at the contractual or state statutory rate, and any alteration of nonbankruptcy rights constitutes impairment. Mot. at 17.

However, "[c]reditors' entitlements in bankruptcy arise in the first instance from the

12

underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) (quoting *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20 (2000)). Accordingly, there is no impairment where the Bankruptcy Code—and not the Debtors' Plan—modifies alleged non-bankruptcy contractual rights. Put differently, "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003).

Section 502(b)(2) of the Bankruptcy Code disallows unsecured claims for postpetition interest. And so ordinarily, holders of unsecured claims (like members of the Trade Committee) have no right under the Bankruptcy Code to include such interest as part of their allowed claims. However, because the Debtors are presumed to be solvent, *Cardelucci* directs that the Debtors pay postpetition interest on allowed unsecured claims (at the "Federal Judgment Rate"). 285 F.3d at 1234. And like the Plan here, the plan in *Cardelucci* "provided for payment in full" of the unsecured claims at issue by using the "Federal Judgment Rate." *Id*. at 1233.[7]

The Trade Committee also contends that other circuits "have held that postpetition interest on unsecured claims in a solvent debtor case need not accrue at the Federal Judgment Rate." Mot. at 18. However, because the Ninth Circuit has directly decided the issue in *Cardelucci*, the cited out-of-circuit authority does not give rise to a substantial ground for difference of opinion justifying an interlocutory appeal. *Couch*, 611 F.3d at 634 (noting that the presence of a nonbinding opinion would not be a substantial ground for disagreement as to controlling law); *ThinkFilm*, 2013 WL 654010, at *2 (finding that a nonbinding case directly opposed to the

---

[7] The Trade Committee's contention that *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1073 (9th Cir. 2002) gives rise to a conflict is also misplaced. Mot. at 17-18. Like *L & J Anaheim*, *Sylmar Plaza* did not address the appropriate rate of postpetition interest on an unsecured claim in a solvent debtor case. The Ninth Circuit held only that it was appropriate for a debtor to take advantage of the Bankruptcy Code's reinstatement provisions, even if doing so would adversely impact the creditor's contractual or nonbankruptcy rights. *Sylmar Plaza*, 314 F.3d at 1075 (rejecting the argument "that a plan intended to nullify the consequences of a default (thereby avoiding the higher post-default interest rate) does not meet the purposes of the Bankruptcy Code").

13

decision on appeal does not meet the threshold for substantial ground for difference of opinion).[8]

### iii. Materially Advance the Chapter 11 Cases

No party truly disputes that, if the Trade Committee prevails on its appeal, the Debtors' Plan in its current form will be unconfirmable. Yet, no party can know whether the Plan is confirmable until *after* the confirmation hearing. Far from materially impacting the course of plan confirmation, allowing the present appeal to go forward on discrete issues that are only components of the Plan as proposed—and that have yet to be ruled upon—could create procedural chaos. An immediate, interlocutory appeal raises the specter of piecemeal appeals, which will not materially advance the Chapter 11 cases. *See United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) ("[I]n passing [Section 1292(b)] Congress did not intend that the courts abandon the final judgment doctrine and embrace the principle of piecemeal appeals.").

The Trade Committee contends that appealing the PPI Memorandum and Order now, rather than after confirmation, could provide clarity as to potential additional liabilities. Reply at 2. That may be. But the true "litigation" here is the plan confirmation process, of which the postpetition interest issue is just one piece of the puzzle. *See Piper Jaffray & Co. v. Mktg. Grp., USA, Inc.*, No. 06-CV-2478H, 2007 WL 2316996, at *1 (S.D. Cal. Aug. 9, 2007) ("[T]he Court concludes that the determination of these issues would not materially advance the ultimate termination of the litigation since other issues would have to be determined in order to resolve Plaintiff's claims."). No time, effort, or expense in litigating this issue will be saved by allowing the Trade Committee's appeal sooner rather than later. A confirmation order that permits the

---

[8] Even were this not the case, the cases cited by the Trade Committee are inapposite or distinguishable. For example, in *In re Ultra Petroleum Corp.*, 943 F.3d 758 (5th Cir. 2019), the Fifth Circuit expressed "no view" on the postpetition interest rate payable to unsecured creditors and affirmed the principle that a debtor's plan does not impair a creditor's rights where those rights do not exist under the Bankruptcy Code in the first instance. *See id*. at 766, n.2. And the Third Circuit's decision in *PPI Enterprises* does not conflict with the PPI Memorandum and Order because *PPI Enterprises* held only that a claim is impaired if the plan, and not the Bankruptcy Code, impairs the creditor's rights. *See* 324 F.3d at 204; PPI Memorandum at 14-16. That is not inconsistent with the PPI Memorandum and Order, and does not create a conflicting decision that justifies an interlocutory appeal, because nothing in the Third Circuit's holding addressed the appropriate rate of postpetition interest on an unimpaired claim in a solvent debtor case. Similarly, the question in *In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006), involved which contractual interest rate was to be applied under a plan, and no party argued that the Federal Judgment Rate should apply.

14

Trade Committee (and numerous other parties) to raise potential confirmation issues on appeal is either on the horizon, or the Plan as proposed will be rejected and this appeal will become unnecessary. There is no judicial economy in allowing the appeal to move forward now.

In a bankruptcy case this massive and complex, there inevitably will be a long list of other post-confirmation issues that will require the Court's review at the appropriate time. Many of these issues will be presented to the Bankruptcy Court at the confirmation hearing, at which time the Trade Committee can object, and thereafter file its appeal as of right to a final order confirming the Plan, should one be entered.

IV. **CONCLUSION**

The PPI Memorandum and Order are not final, and the Trade Committee's request for leave to appeal is denied.

**IT IS SO ORDERED.**

Dated: 4/14/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge